*57 The opinion of the court was delivered by
Watkins, J.
Under the authority of Articles 196, 200 and 201 of-the Constitution, the District Attorney of the Twenty-sixth Judicial District instituted this suit against the respondent as Sheriff of the-Parish of Jefferson, one of the parishes composing that district, for-his amotion or removal from office.
On the authority of Act 185 of 1880, the plaintiff prayed that a. special jury be ordered to try the case, and the jury selected returned a verdict in favor of the relator, and from a judgment of removal the respondent has appealed.
Preliminary to the discussion of the various charges that are preferred against the respondent, there are several alleged irregularities in the proceedings which must be considered.
I.
The respondent’s counsel excepted to and moved to quash the. venire on the grounds: (1) That the Jury Commissioners did not examine and revise the original venire list, and strike therefrom the. names as required by law, but that such revision was made by persons who are unauthorized by law; (2) that the venire was drawn within thirty days of the term at which the jurors were to serve, and was not advertised in the official journal as required by law; (8) that no list of the jury was made by the clerk and handed to the sheriff to be served; (4) that all of the officers appointed by law, and citizens appointed by the court did not.participate in drawing the venire.
This suit was filed on the 18th of June, 1889, and a regular non jury term of the court convened on the 24th of that month, and on that day the respondent’s motion to quash the venire was filed. The law provides that “in case either party prays for a jury during a term for which no jury has been drawn * * the court shall at once, order the Jury Commissioners to draw * í! a special jury * * to try the case, if either party require it. * * In all cases, where a special jury is ordered, the judge shall order the drawing of thirty qualified jurors, who shall be summoned by service of notice in the usual form.” Section 4, of Act 185 of 1880.
In exact compliance with that statute, the judge a quo made an order for the summoning of a special jury of thirty qualified jurors. This order was made on the day the' suit was filed, and the Jury *58 Commissioners assembled on the 18th of June following and revised the jury lists, and selected therefrom the requsite number of names and placed them upon separate slips of paper, and deposited them in a box, and thirty names were drawn therefrom and listed, and the list constituted the special venire in question. It is quite true that only twenty-six persons answered to their names when called on the day the court first convened, and that one was not summoned, but neither the validity or legality of the venire were effected thereby.
Under such circumstances the special jury is not required to be drawn more than thirty days before the term of court convenes, and no advertisement is required.
There was no irregularity or illegality in the drawing or the composition of the jury.
II.
The petition, taken in connection with the annexed documents, state the charges fully, and a cause of action is set out.
III.
Counsel make serious complaint of the judge’s ruling in regard to fixing the case for trial. We can discover no impropriety in the acts Df the judge in this particular, or any possible injury the respondent has suffered, on account of such alleged errors. The judge was fully authorized and empowered to enact rules of proceeding in his court. O. P. 145.
As our predecessors very justly observed in Green vs. Dakin, 15 La. 152, we may properly reiterate here:
“We have not the power, and still less the inclination, to interfere with the police and regulations of inferior courts unless they be manifestly contrary to law and lead to gross injustice.”
This is not the case in this instance.
IV.
Respondent made an application for a change of venue on the ground that he could not expect to obtain a fair trial in the parish of Jefferson, where the suit was pending, “because of prejudice existing in the public mind.” R. S. Sec. 8908.
Under the evidence in the record we do not feel justified in interfering with the judge’s discretion.
*59 v.
On the 5th of July, the respondent filed an affidavit stating that one Wilson, who was at that time in Ohieago, Illinois, was an important witness and that his testimony was material and indispensable to his defence; and that said Wilson left the parish of Jefferson prior to the institution of this suit. It further stated that the testimony of one Bates, who resided in the parish of Bast Baton Rouge, was material and indispensable for his defence. On this affidavit the respondent’s counsel requested the issuance of appropriate ■commissions to have the testimony of said witnesses taken, under the provisions of C, P. 436 and 437. This application was refused by the court because the motion and affidavit were not prepared as the law requires, nor within the delay fixed by law.
Article 436 of the Code of Practice provides that “when the witness intended to be examined lives out of the State, it shall be sufficient for the party wishing to take his. testimony to apply to the judge having jurisdiction of the cause, and swear to the materiality of the testimony.”
This article must be construed with the succeeding articles, one of which provides that “commissions must be accompanied with the interrogatories,” and must be notified to the adverse party. O. P. 438.
This was not done in this ease. But the circumstances under which this application was made were peculiar and exceptional, as will readily appear from what has already been said in this opinion, and many of them are set out by the judge a quo in his reasons for refusing it. Like the question of practice, in reference to the fixing of causes for trial, much discretion is vested in the judge who presides at the trial. Indeed, the Code of Practice provides that “when either the plaintiff or the defendant has witnesses whom he wishes to be heard in support of his claims, he must cause the testimony of such witnesses to be taken in writing, to be read in evidence on the trial of the cause, pursuant to the rules of. the respective courts.” ‘C. P. 424.
It is not pretended that the application was made in pursuance of C. P. 465; and it could not have been, because it is distinctly stated that one of the witnesses resided in Baton Rouge, and the other went to Chicago before the suit was filed; and it does not appear that either party had ever been summoned.
*60 The ruling of the judge was clearly correct.
The application having been refused, the defendant’s counsel prepared and tendered another application, in which the substance of' the testimony of those witnesses was given; and time was demanded to take the evidence. In the exercise of a legal right, the relator’s counsel made and filed an admission that if the witnesses named were present in open court they would swear to the facts enumerated ; and it was the duty of the court forthwith to proceed with the trial as if such witnesses had been examined. O. P. 466.
The defendant has no ground of complaint on this score.
VI.
Complaint is made that neither the relator nor the petitioning citizens made a deposit of the $12 “jury costs” with the clerk of the court, as is required by Sec. 9 of Act 44 of 1877, and that the jury was illegally ordered without such deposit. That act is the general jury law in force, and we have already decided that Sec. 4 of Act 135 of 1880 controlled the drawing of the jury in this case, and that statute contains no provision similar to the general jury law on that subject. It is a noteworthy fact that the law makes no provision for the payment of any costs by the State in such a case as this. The statute regulating the modus operandi in such suits as this declares, “that if judgment in such suits be rendered against the defendant he shall be condemned to pay all costs, and if judgment be rendered in his favor, the citizens at whose request the suit was brought shall be condemned jointly and in solido to pay all costs.” Sec. 10 of Act 135 of 1880.
This is substantially the same provision as that of Sec. 7 of Act 122 of 1880, in relation to the trial of such of this class of cases as may be tried in this court originally; and we have decided that the State could not be held, by a judgment of this court, amenable for the cost of such a proceeding, in any court, as the law now stands. State ex rel. Attorney General vs. Lazarus, Judge, 40 An. 856.
VIL
There are several minor questions of like character which are discussed in the respondent’s counsel’s brief, and pressed upon our attention in oral argument; but as an examination and decision of them can not affect the issues .before ps, we pass them over without discussion.
*61 After giving patient and careful consideration to the various technical pleas that were interposed in behalf of the respondent, we have at last reached the merits of this case.
The charges preferred against the respondent are thirteen in number, consisting of a great variety of official delinquencies in the discharge of the duties of the office of Sheriff and the duties devolving upon him as State Tax Collector, by virtue of his office.
Of these we only propose to take notice of two or three in detail: The first that strikes our attention is the seventh charge, which is, that the respondent “is in the habit of charging prisoners accused and released on bond the sum of $1 on such release, which charge is not lawful, and it is therefore extortionate.”
To this charge his counsel say in their brief, page 21:
The candid answer is, that he “does charge $1 for a release on bond.”
Speaking as a witness, the respondent says: “The rule of the office has been to charge a dollar, but I have never allowed that charge to retain a prisoner in custody. I have never denied a man the right of liberty if he said he would pay the charge.”
As his authority for making this charge he says: “I have consulted my attorney on the score of the Sheriff’s fee bill. Act 101 of 1870, the only fee bill I know of, provides for the charge of $1.”
Section 2 of that act provides, among other things, “that the Sheriffs throughout the State shall be entitled to demand and receive the following fees of office, and no more, viz:
“For taking bond in all cases, civil or criminal, when by law the Sheriff is required to take bond, $1.”
It strikes us as being quite a novel proposition that a sheriff or an attorney at law should have' seriously supposed that that law was a shield for such practices. It had for its declared purpose “to define and regulate the costs of clerks and sheriffs throughout the State.” The one quoted is but one item in the act, and it certainly does not follow therefrom that the Legislature intended to authorize sheriffs to extort, in cash, and in advance, $1 from a defendant in a civil suit as a condition precedent to the release of his property from seizure, or from an accused person in a criminal prosecution — the like sum as a condition precedent to the release of his per *62 son from custody. For, if the sheriff may demand and receive $1 for the taking of bail bonds, what reason is there to say he shall not demand and receive all other fees in the same way and at the same time; for the law says he is “entitled to demand and receive the following fees of office?” It is certainly not a sufficient excuse for the defendant to say that he has never denied any one his liberty “who said he would pay the charge.” That he was willing to take a prisoner’s verbal assurance, does not alter the principle involved.
For, the corollary of his own theory is fully established by respondent’s own evidence, and it is that, if a person under arrest should decline to make such promise, be would refuse him his liberty.
Surely, argument is unnecessary to demonstrate the utter fallacy of such a proposition as this.
VIII.
The eleventh charge against the respondent is that he is the owner of a newspaper in which he publishes all official notices appertaining to tax proceedings, and also advertisements of tax sales, and that his charges therefor are unlawful, unreasonable and extortionate, and that the same are illegally made.
The law requires that the tax collector “shall proceed to advertise for sale the consolidated delinquent list, under one form, as provided for judicial sales, all the immovable property on which taxes are due, substantially in the following form:” Thus, the form is given, and it requires that the advertisement shall state that the sheriff will sell, beginning on a specified day, ‘ ‘ and continuing on each succeeding day until said sales are completed, all immovable property on which taxes are due to the State of Louisiana and parish of-to enforce collection of taxes assessed in the year 18 — , together with interest thereon, from the Slst of December, 18 — , at the rate of 2 per cent, per month until paid, and all costs. The names of said delinquent tax payers, the amount of taxes due by each on the assessment roll of said year, and the immovable property assessed to each, to be offered for sale as follows, to-wit: (Here state names in alphabetical order, the amount of taxes assessed in each year on each specific piece of property, then the description of each specific piece of immovable property to be offered for sale, and conclude substantially thus:”) * * * *
It requires that “said advertisement shall be signed officially by *63 the State Tax Collector, * * and shall be dated,” and “that each ten lines of nonpareil type of tax sale advertisement shall constitute a square, and shall be paid for by the tax collector, as now provided by law; each delinquent being responsible only for the pro rata space of said ten lines occupied by the description of his taxes and property.” Section 53 of Act 85 of 1888.
Ever since the adoption of the Constitution of 1879, similar provisions have been made in all revenue statutes.
The manifest purpose of the Legislature was to reduce to a minimum the cost of forced expropriations of tax delinquent property, and to relieve the people from the oppressive burdens that had been laid upon them under the operation of prior revenue laws.
The proof in this case conclusively shows that this statute was completely ignored by the respondent. He made a separate advertisement of each piece of property. When the same piece of property was advertised for sale for several years’ delinquent taxes, the advertisement was repeated for each year. He did not advertise “a consolidated list under one form,” as the law requires. The proof shows that the defendant did not use nonpareil type, but a larger size, and thereby the number of squares is largely increased.
This course of dealing with the property of delinquent tax payers is not denied by the respondent; but he confesses it and says that he acted under advice of counsel. This can not avail; for it is too evident to admit of question, that the defendant, as a public officer, has construed the law to suit his own convenience and so as to enrich himself at the expense of the tax payers. The direction of the law is too plain and unambiguous to admit of doubt or question.
Now what is the law applicable to such a state of facts as this?
Act 19 of 1886 provides “that no costs, whether in the shape of stamps or otherwise, shall be demanded or exacted from any defendant or party accused, in any criminal prosecution in this State; and all processes for the attendance of witnesses, and other processes of court, shall issue in his behalf, without the payment of any advance costs or affixing any stamps; and no defendant or party accused shall, in any case, be required to pay any costs or affix any stamps, until he shall have been tried, convicted and condemned to pay costs.”
Section 1 of Act 57 of 1888 provides “that any public officer * * whose compensation * * is fixed by the Constitution or laws *64 * * who shall charge, or receive, or take, directly or indirectly, any more than said lawful compensation for said official services or employment, shall be deemed guilty of extortion in office,” etc.
(The italics are ours.)
Section 3 of that Act declares “that any officer or person violating the provisions of this Act shall be deemed guilty of a misdemeanor,” and be punished accordingly.
Indeed the Constitution declares, in terms, that “sheriffs shall receive compensation from the parish for their services in criminal matters * * not to exceed $500 per annum.'’’’ Const., Art. 119.
In discussing that constitutional restriction on sheriffs, this court .said in Lake, Sheriff, vs. Parish of Caddo, 37 An. 788:
“Without concerning itself with the particular verbiage to be employed, the impulse (of the Convention) was to get rid of these annual drafts upon the people in criminal matters, and it did not care what the matter was, for which these annual charges had been made, .so it appertained to criminal expenses; the intention was to wipe them out and substitute a fixed annual allowance, not to be exceeded.”
In the light of all these concurrent laws, specific and plain in their terms, how can it be conceded that the defendant’s custom was either innocent or accidental? How can it be palliated by the advice of counsel? While it is true the sheriff neither as such, nor as tax collector, received any additional compensation, by means of the illegal advertisements which appeared in the newspaper which was owned and operated by him personally, yet it was under the color of- his office that such illegal exactions were made, and large sums of money extorted from the tax payers, because the sheriff, as ex officio tax collector, is required to prepare tax advertisements, and insert them in the newspaper. It is made his duty to collect the cost of such advertisements from delinquents, or from the proceeds of sale. Hence, it is through the illegal act of the sheriff, officially, that such unlawful exactions are made, and the money thus unduly extorted from the people is paid into his coffers.
Many other acts of non-feasance and misfeasance are charged against the respondent and supported by proof; and, while they might not of themselves support this action, yet they serve to add force to those more serious charges, on two of which we have chosen to rest our conclusions. But, while we express no opinion as to the weight or gravity of the former, and maintain the sufficiency of the *65 latter, we take the precaution to announce that each case of this kind must depend on its own facts; and, finally conclude that the facts of this case, taken as a whole, fully sustain the verdict of the-jury and judgment of the court a qua.
Judgment affirmed.